1

2

3            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF WASHINGTON
4

5  LEAH SHIPLEY,                    )
                                    )    No. CV-10-3003-CI
6             Plaintiff,            )
                                    )    ORDER DENYING PLAINTIFF'S
7  v.                               )    MOTION FOR SUMMARY JUDGMENT
                                    )    AND DIRECTING ENTRY OF
8  MICHAEL J. ASTRUE, Commissioner  )    JUDGMENT FOR DEFENDANT
   of Social Security,              )
9                                   )
              Defendant.            )
10                                  )

11      BEFORE THE COURT are cross-Motions for Summary Judgment (ECF

12  No. 21, 24.)  Attorney D. James Tree represents Plaintiff; Special

13  Assistant United States Attorney Gerald J. Hill represents

14  Defendant.    The parties have consented to proceed before a

15  magistrate judge.  (ECF No. 7.)  After reviewing the administrative

16  record and briefs filed by the parties, the court **DENIES** Plaintiff's

17  Motion for Summary Judgment, and directs entry of judgment for

18  Defendant.

19                            **JURISDICTION**

20      On October 7, 2004, Leah Shipley[1] (Plaintiff) applied for

21  supplemental security income benefits (SSI).[2]  (Tr. 16, 51.)  She

22  alleged disability due to right eye blindness, lupus, asthma,

23

24      [1]  At the time of the hearing, Plaintiff's married name was

25  Leah Shipley Snovelle.  (Tr. 989.)

26      [2]  The ALJ noted prior SSI applications filed in 1993, 1996,

27  1997, 2000, and possibly 2003.  (Tr. 990.)

28

diabetes, arthritis, cancer, gastritis, hepatitis C, and mental problems, with an alleged onset date of January 1, 1996. (Tr. 180, 184, 990.) Benefits were denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held before ALJ Joel Elliot on December 13, 2007. (Tr. 987-1023.) Plaintiff, who was represented by counsel, medical expert John B. Nance, Ph.D., and vocational expert Patricia Ayerza, testified. The ALJ denied benefits on February 29, 2008. (Tr. 16-26.) The Appeals Council denied review. (Tr. 7-9.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve

conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof

rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**SEQUENTIAL EVALUATION IN THE CONTEXT OF SUBSTANCE ADDICTION**

The Contract with America Advancement Act of 1996 (CAAA) amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Special statutes and regulations govern disability claims that involve substance abuse.

Under the regulations implemented by the Commissioner, where there is evidence of substance addiction, the ALJ must follow a specific analysis that incorporates the sequential process discussed above. 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ must conduct

the five-step inquiry without attempting to determine the impact of substance addiction.  If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Id*.  If the ALJ finds the claimant disabled with the effects of diagnosed drug dependence, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant's drug addition is a contributing factor material to disability.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

Once a claimant is found disabled with the effects of substance addiction, it is her burden to prove substance addiction is not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  As stated by the *Parra* court, a drug addicted claimant "who presents inconclusive evidence of materiality has no incentive to stop [abusing drugs], because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." *Id.*  Thus, through the CAAA, Congress seeks "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d at 817, 824 (9th Cir. 2001).  In these proceedings for federal disability benefits, Plaintiff must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish her drug use is not a contributing factor material to her allegedly disabling impairments.  *Parra*, 481 F.3d at 748-49.

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 32 years old, married, with an eleventh grade education. (Tr. 993.) She had two teenage daughters who lived with their maternal grandmother. Plaintiff testified she had past work experience as a restaurant server and a cashier. (Tr. 993.) She stated she could not work due to fatigue and diabetes. (Tr. 994.) Plaintiff had a significant history of poly-substance abuse that included methamphetamine use until 2000. She testified she continued to use marijuana, and in June 2006, she obtained a medical marijuana card from the State of Washington. (Tr. 1000-02.) She reported the marijuana helps with pain, nausea, and anxiety. (Tr. 1002.) She also reported using marijuana, 7-8 times a day, 2 grams per day. (Tr. 856, 1000-01.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Elliot found Plaintiff had not engaged in substantial gainful activity since the SSI application date, October 7, 2004. (Tr. 18.) At step two, he found Plaintiff had the severe impairments of "diabetes mellitus, hepatitis C, lupus, marijuana abuse, attention deficit hyperactivity disorder, bipolar disorder, borderline personality disorder, substance abuse, and posttraumatic stress disorder." (*Id.*) At step three, he determined Plaintiff's impairments, including substance abuse disorder, met the requirements of Listing sections 12.02 (Organic Mental Disorders), 12.04 (Affective Mental Disorders), 12.06 (Anxiety-Related Disorders), 12.08 (Personality Disorders), and 12.09 (Substance

Addiction Disorders). (Tr. 19, 1004.) She was therefore disabled with the effects of substance abuse. 20 C.F.R. § 416.920(a)(4)(iii).

The ALJ proceeded to a second sequential evaluation and found that if Plaintiff stopped the substance use "the remaining limitations would cause more than a minimal impact on [her] ability to perform basic work activities; therefore, [she] would continue to have a severe impairment or combination of impairments," but those impairments would not meet or medically equal any of the Listings. (Tr. 19.)

The ALJ then found if Plaintiff stopped using drugs, her severe impairments could reasonably cause alleged symptoms and limitations, but her statements regarding the intensity and persistence of her symptoms were not credible to the extent they precluded work within her residual functional capacity without the effects of substance use. (Tr. 21.) At step four, the ALJ found if Plaintiff stopped the substance use, she would be capable of light work that was simple or semi-skilled, *i.e.* did not involve complex tasks. He also found she would be limited to minimal public interaction in the workplace. (Tr. 20.) He concluded her RFC precluded an ability to perform her past relevant work. At step five, considering the RFC and vocational expert evidence, the ALJ determined if Plaintiff stopped her substance use, with her RFC she was able to perform a significant number of other light level jobs in the national economy; she was, therefore, not "disabled" as defined by the Social Security Act. (Tr. 25.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff argues the ALJ erred when he: (1) improperly rejected examining and treating provider opinions, and (2) failed to meet the Commissioner's burden at step five.  (ECF No. 22.)  The Commissioner asserts the ALJ's decision is supported by substantial evidence and free of legal error, and should be affirmed.  (ECF No. 25.)

**DISCUSSION**

**A.   Evaluation of Medical Evidence**

Plaintiff argues the Commissioner's determination of non-disability is based on legal error.  She contends the ALJ improperly evaluated medical opinions from treating physician William C. Bothamley, physician's assistant Eric Stroud, and limitations assessed by mental health therapist C. J. Burns, LICSW, MSW.[3] (ECF No. 22.)

In evaluating a disability claim, the adjudicator must consider all medical evidence provided.  A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted,

---

[3]   As a licensed physician, Dr. Bothamley is an "acceptable medical source," and, therefore, qualified to establish a medically determinable impairment.  Mr. Stroud and Mr. Burns are medical "other sources," whose opinions regarding work-related limitations may be considered by the adjudicator.  20 C.F.R. § 416.913(a),(d).

they can be rejected by the decision-maker only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion with specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989)(*quoting Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(*citing Magallanes*, 881 F.2d at 751). The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

A claimant's credibility is an appropriate factor considered in the evaluation of medical evidence. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). Where a case turns on the reliability of a claimant's allegations of pain, credibility findings are critical. The Commissioner's credibility determination should be as comprehensive and analytical as feasible, and the finding should be explicit whether the Secretary believed or disbelieved the claimant. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (*quoting Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert denied*, 420 U.S.

931 (1975)). Medical opinions based on a claimant's subjective complaints are properly rejected as unreliable where the claimant's credibility has been properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In evaluating the effects of drug use on Plaintiff's disability, the ALJ gave a detailed summary of the medical records, summarized Plaintiff's testimony and made credibility findings, interpreted the evidence in its entirety, and made appropriate findings at steps four and five. The ALJ properly considered Plaintiff's lack of credibility in assessing the medical and other source opinions relied upon by Plaintiff. *See Webb*, 433 F.3d at 688.

**1.   Acceptable Medical Source - William Bothamley, M.D.**

Dr. Bothamley was Plaintiff's treating physician at Family Practice Clinic (FPC) from November 2005 through March 2007. (Tr. 660-774.) Plaintiff relies on Dr. Bothamley's evaluations completed December 22, 2005 (Tr. 661-65), and April 9, 2007. (Tr. 778-79.) Specifically, Plaintiff contends the ALJ did not properly reject Dr. Bothamley's opinions she needs to lie down during the day for at least one to two hours due to pain and fatigue, and if she were employed, work would cause her condition to deteriorate, would aggravate symptoms of pain and fatigue, and she would miss four or more days per month due to her impairments. She also argues the ALJ did not give adequate weight to Dr. Bothamley's conclusion that she would not "be able to be gainfully employed." (ECF No. 22 at 15.)

After summarizing Dr. Bothamley's opinions, the ALJ gave them

little weight and articulated legally sufficient reasons for the weight given. (Tr. 23.)   For example, he found Dr. Bothamley's opinions were based on Plaintiff's unreliable self-report and unsupported by objective medical evidence or examination findings. (Tr. 22-23.)   These specific, legitimate reasons for rejecting Dr. Bothamley's opinions are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A review of the December 2005 evaluation (completed shortly after Plaintiff's initial visit), shows Dr. Bothamley relied heavily on Plaintiff's representations in assessing Plaintiff's physical limitations, *i.e.,* "Patient states she has all of the above restrictions;" and "I asked patient about employment and she felt this would not be an option." (Tr. 662-63.) The ALJ also noted Dr. Bothamley's observation that Plaintiff had an "extensive positive review of systems," *i.e.,* if asked whether she had a problem with something, she always would respond positively.  (Tr. 23, 662-63.) Dr. Bothamley's April 2007 evaluation reflects reliance on Plaintiff's self-report: "Pt stated [work] would exacerbate pain and fatigue, breathing problems would be exacerbated and she also feels anxiety would increase," (Tr. 779), "and states she usually has to lie down 1-2 hour/day or longer due to these symptoms." (Tr. 778.)

The ALJ also found Dr. Bothamley did not conduct his own examination, and referenced findings by rheumatology specialist Daniel Sager, M.D., in support of his evaluation.  (Tr. 23, 664-65.) The record shows, however, that Dr. Sager examined Plaintiff in 2004 and found lupus screening tests "unremarkable."  (Tr. 513.) He neither assessed significant physical limitations based on his

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 11

examination, nor opined Plaintiff was unable to work.  Dr. Sager examined Plaintiff again at Dr. Bothamley's request in 2007, to confirm a diagnosis of lupus.  (Tr. 750-51.)  As was the case in 2004, Dr. Sager found no significant physical findings, noting joint tenderness with no swelling, or deformity, and "preserved range of motion" in her large joints.  (Tr. 761.)  In November 2007, Dr. Sager still could not confirm a diagnosis of lupus.  (Tr. 898-900.) Symptoms of pain were self-reported but, as noted by Dr. Sager, "specific features of lupus [were not] objectified, serologically or clinically."  (Tr. 898.)  Due to his status as a rheumatology specialist, Dr. Sager's opinions regarding the lupus are given more weight than opinions of non-specialists.  20 C.F.R. § 416.927(d)(5). The ALJ did not err in rejecting Dr. Bothamley's opinions as being unsupported by objective medical findings or examination findings. *Tonapetyan*, 242 F.3d 1144 at 1149.

The record also supports the ALJ's rejection of Dr. Bothamley's opinions that are based on self-report.  The Commissioner's credibility findings are not challenged.  (Tr. 21-22.)  *De novo* review of the record shows the ALJ's reasons for discounting Plaintiff's subjective complaints and reports of severe limitations are "clear and convincing," and supported by substantial evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (*citing Thomas*, 278 F.3d at 957).  As found by the ALJ, Plaintiff's reports to various providers and at the hearing regarding the frequency and quantity of marijuana used throughout the relevant time are inconsistent. (Tr. 22-23.)  A lack of candor regarding drug use adversely impacts a claimant's credibility.  *See, e.g., Thomas*, 278 F.3d at 959;

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 12

1   *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999).  The record

2   also shows Plaintiff reported being abstinent from drugs for six

3   months out of twenty years, but gave different reports to providers

4   regarding her last use.  (*See, e.g.,* Tr. 22, 460, 1001.)  Further,

5   Dr. Bothamley's own clinic notes mention drug-seeking behavior and

6   consistent failure to follow up with testing and medication

7   requirements.  (Tr. 678-79, 691, 918, 933.)  Failure to follow

8   recommended medical treatment is a "clear and convincing" reason for

9   discounting subjective symptom complaints.[4]  *Tommasetti v. Astrue*,

10  533 F.3d 1035, 1039 (9th Cir. 2008).

11      Documentation from counselors and other medical sources

12  supports this finding.  Records reflect concerns regarding

13  Plaintiff's ongoing lack of compliance with diabetes treatment, her

14  failure to keep diabetes appointments with the treating specialist,

15  her failure to monitor blood sugar levels and adhere to diet

16  restrictions, and lack of consistency in mental health treatment.

17  (Tr. 794, 883, 898, 933, 949.)  The ALJ did not err in rejecting Dr.

18  Bothamley's opinions that were based on Plaintiff's unreliable self-

19  report.  The ALJ's evaluation of Dr. Bothamley's opinions are

20

21      [4]  As noted by Dr. Bothamley in 2006, diabetes is probably

22  Plaintiff's most significant physical impairment, due to poor

23  control.  (Tr. 671.)  Impairments that can be controlled effectively

24  with medication and treatment "are not disabling for the purpose of

25  determining eligibility for SSI benefits."  *Warre v. Commissioner of*

26  *Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also*,

27  20 C.F.R. § 416.930.

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 13

1  supported by substantial evidence from the entire record and free of

2  legal error.

3      **2.   Other Source Medical Opinions**

4      "Other source" opinions include assessments by mental health

5  therapists, physicians' assistants and nurse practitioners.   20

6  C.F.R. § 416.913(d).   Their opinions may be helpful in assessing a

7  claimant's functional limitations to the extent they are supported

8  by evidence in the record.   *Social Security Ruling* (*SSR*) 06-03p.

9  Although other sources cannot establish a medically determinable

10 impairment, the Commissioner has ruled that weight given to their

11 opinions must be evaluated on the basis of certain factors, *e.g.,*

12 their professional qualifications, how consistent their opinions are

13 with the other evidence, the amount of evidence provided in support

14 of their opinions, whether the other source opinion is well

15 explained, and whether the other source "has a specialty or area of

16 expertise related to the individual's impairment." *SSR* 06-03p.   An

17 adjudicator may consider these factors in giving the non-medical

18 treatment provider's opinion more weight than that of an acceptable

19 medical source.   *Id.*

20     The ALJ is required to "consider observations by non-medical

21 sources as to how an impairment affects a claimant's ability to

22 work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th   Cir. 1987).

23 Moreover, an ALJ is obligated to give specific reasons "germane" to

24 a lay witness's testimony before discounting it.   *Stout v.*

25 *Commissioner, Social Security Admin.*, 454 F.3d 1050, 1053 (9th Cir.

26 2006); *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).

27 Although other source testimony may be used to show the severity of

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 14

an impairment, it can never establish disability absent corroborating competent medical evidence. 20 C.F.R. § 416.913(a), (d)(4); *Nguyen,* 100 F.3d at 1467; *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

   **a.  C. J. Burns, LICSW, MSW.**

   Mr. Burns is a mental health therapist at Central Washington Mental Health Center who completed psychological evaluation forms in December 2005, December 2006, and April 2007. (Tr. 654-59, 710-15, 775-77.) As noted by the ALJ, Mr. Burns opined Plaintiff had marked mental limitations in several categories, including her ability to understand and follow complex instructions, relate appropriately to co-workers and supervisors, interact appropriately with the public, and respond to and tolerate normal work pressures. (Tr. 23, 656, 775-77.)

   Plaintiff contends Mr. Burns was a "primary mental health provider," and *SSR* 06-03p dictates his opinions deserve heightened consideration. (ECF No. 22 at 14.) However, the record shows Mr. Burns' opinions are included in psychological evaluation forms, are unexplained by a narrative report, objective testing results, or comprehensive clinic notes. There is no evidence Mr. Burns had significant contact with Plaintiff. The record includes two clinic notes signed by Mr. Burns. His observations are based on Plaintiff's self-report,[5] and Mr. Burns references no objective test

---

   [5] The record contains six progress notes signed by Mr. Burns dated between December 2006 and February 2007. Three indicate "no show" by Plaintiff; the other three are brief and reflect

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 15

results to support his conclusions.  (Tr. 775-77.)  Further, as found by the ALJ, his conclusions are not consistent with other providers' treatment records.  His assessment, therefore, does not warrant the heightened consideration asserted by Plaintiff.  To reject Mr. Burns opinions, the ALJ was required to meet the "specific and germane" standard articulated in *Nguyen.*

The ALJ discounted Mr. Burns' opinions because he was not an acceptable medical source and because his opinion that Plaintiff's polysubstance dependence was in sustained remission was not consistent with the treatment record.  (Tr. 23-24.)  The fact that Mr. Burns is not an acceptable medical source is not, by itself, a legally sufficient reason to reject an other source opinion.  By definition, an "other source" is not an acceptable medical source.  20 C.F.R. § 416.913(d)(1).  However, a careful reading of the ALJ's evaluation of Mr. Burns' opinions shows the ALJ gave Mr. Burns' opinions little weight "because Mr. Burns is not an acceptable medical source and describes claimant's polysubstance dependence as in sustained remission."  (Tr. 23.)  Although Mr. Burns may provide evidence regarding a claimant's work-related mental functioning, he is not qualified under the regulations to diagnose a mental impairment, *i.e.*, possible "polysubstance dependence in partial remission."  (Tr. 655, 711); 20 C.F.R. § 416.913(a)(d); *SSR* 06-03p (other sources cannot establish a medically determinable impairment).  Therefore, the ALJ properly rejected Mr. Burns' diagnosis.

Plaintiff's self-report.  (Tr. 819-34.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 16

The ALJ also reasoned Mr. Burns' opinion that Plaintiff's drug dependence was "in remission" is not consistent with the treatment record.  (Tr. 23-24.)  This finding is specific and germane to Mr. Burns' opinion and supported by the record.  Plaintiff has the burden to show drug dependency is not a contributing factor material to her disability.[6]  *Parra*, 481 F.3d at 748-49.

---

[6]  Plaintiff purports to argue that medical marijuana use should not be a reason to deny her SSI benefits because she has a medical marijuana card and her marijuana use is "not illicit" in the State of Washington.  (ECF No. 22 at 14; Tr. 969.)  Plaintiff provides no legal support or cogent analysis for this argument.  A review the Washington State Medical Marijuana Act submitted by Plaintiff shows the state law was passed to protect patients who use and physicians who prescribe medical marijuana from criminal prosecution in state and local courts.  RCW 69.51A.005; Tr. 981.  Plaintiff also submits *The Washington State Medical Marijuana Act, A Guide for Patients and Physicians* (June 1, 1999) which states specifically: "Remember, federal laws banning medical marijuana remain in effect." (Tr. 983.)  While individual states have the authority to regulate medical care within their borders, *Oregon v. Ashcroft*, 368 F.3d 1118, 1124 (9th Cir. 2004), there is no support for an argument that a SSI applicant who resides in a state that allows the use of medical marijuana is exempt from the Contract with America Advancement Act, the Social Security Act, and implementing federal regulations that deny disability benefits where drug addiction is a contributing factor material to the person's

Contrary to Mr. Burns assumption, the record, including hearing testimony, shows Plaintiff had been using marijuana and other drugs since she was 10 years old, had been drug-free once during that time for a maximum six months, and had a significant drug abuse history which included cocaine and methamphetamine. (Tr. 547, 856, 1001.) She testified she was using medical marijuana at the time of the hearing seven to eight times a day. (Tr. 1001.)  It is also noted upon review that treatment records from other therapists do not support Mr. Burns' assumption that Plaintiff was not using drugs when he completed his reports.  For example, the record contains reports from mental health providers and reviewing psychologists who note a significant drug history, ongoing drug use, alcohol abuse, marijuana addiction, and failure to follow through with substance abuse treatment, and inconsistent report of substance use. (*See, e.g.,* Tr. 272, 460, 531, 539, 545-47, 655, 860, 898, 965, 1000.) Mental health counselor Bruce Turk, M.S.W., treated Plaintiff from February 2003 until December 2003, when she was discharged for failure to follow through with appointments. (Tr. 376.)  Prior to discharge, he specifically noted concerns about lack of treatment and ongoing drug use. (Tr. 378.)  In 2004, Plaintiff's therapist at Goldendale, Washington, Becky Twohy, reported Plaintiff failed to attend group counseling, chose to terminate treatment because she was moving, admitted "last use was November 1st,[2004]" and "spent

disability. 42 U.S.C. 423(d)(2)(C); 20 C.F.R. § 416.935. Regardless of state law authorizing the use of medical marijuana, Plaintiff must prove drug use is not a contributing factor to her disability.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 18

the last four or five years cutting back on her drug use." (Tr. 539-46.) Methamphetamine, cocaine, and marijuana dependence were noted. (Tr. 547.) Plaintiff was scheduled to begin intensive outpatient treatment (IOP) on December 14, 2004. (*Id.*) In March and April 2007, examining physicians Philip D. Rodenberger, M.D., and Kimberly Humann, M.D., diagnosed cannabis dependency. (Tr. 962, 966.) There are no reports indicating the results of outpatient treatment or a successful period of abstinence. The ALJ did not err in his rejection of Mr. Burns opinion that Plaintiff's drug dependence was in remission. Mr. Burns' opinions are not supported by the evidence, do not represent functional limitations without the effects of drug use, and, therefore, are not probative to the ALJ's sequential evaluation without the effects of drugs. The ALJ did not err in the weight given mental limitations assessed by Mr. Burns.

**b.    Eric Stroud, P.A.C.**

Mr. Stroud is physician assistant to Dr. Bothamley at FPC. In November 2007, he completed a physical evaluation form and a range of joint motion evaluation chart. (Tr. 902-06.) The record also includes a March 21, 2007, clinic note signed by Mr. Stroud, in which he expressed concerns regarding Plaintiff's compliance and cooperation with diabetes treatment specialists, as well as drug seeking behavior. (Tr. 933.) In November, he opined Plaintiff could perform sedentary work with a variable range of limitations in work related physical activities. (Tr. 903.) The ALJ gave this form opinion little weight because Mr. Stroud is not an acceptable medical source. (Tr. 23.) Plaintiff argues this is not a legally sufficient reason to reject Mr. Stroud's "sedentary level"

1   limitation, and it should be credited. (ECF No. 22 at 17.)

2       Plaintiff is correct that this reason is not sufficient to

3   reject Mr. Stroud's opinion. By definition, a physician's assistant

4   is not an acceptable medical source. 20 C.F.R. § 416.913(d). The

5   ALJ erred when he gave no other specific reasons for rejecting Mr.

6   Stroud's opinion. However, this error is harmless because if Mr.

7   Stroud's sedentary rating is credited, it will not change the

8   outcome of the proceedings. *See Johnson v. Shalala*, 60 F.3d 1428,

9   1436 n.9 (9th Cir. 1995).

10      The hearing transcript provides substantial evidence that, even

11  if Plaintiff were restricted to sedentary level work, there is a

12  significant number of jobs she can still perform. Specifically,

13  the record shows the first hypothetical individual, propounded to

14  the VE by ALJ Elliot, could perform light level work with non-

15  exertional mental limitations. (Tr. 1011.) An exertional level

16  established in the RFC "ordinarily includes all those occupations at

17  any lower exertional levels." *SSR* 83-10. A non-exertional

18  limitation "does not directly affect the ability to sit, stand,

19  walk, lift, carry, push or pull." *Id*. "If someone can do light

20  work, we determine that he or she can also do sedentary work, unless

21  there are additional limited factors such as loss of fine dexterity

22  or inability to sit for long periods of time." 20 C.F.R. §

23  415.967(b).

24      The VE identified examples of a significant number of jobs the

25  individual could perform. (Tr. 1012.) The ALJ then asked the VE to

26  reduce the hypothetical exertional level to sedentary and opine

27  whether this would affect the number of jobs available in the

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 20

national economy. (*Id.*)   The VE responded, "A reduction in numbers, and a conservative reduction based on labor market surveys that we've done and giving the benefit of the doubt to the worker, would be approximately 50 percent of the database, [and] would allow for either sitting or changing positions between sitting and standing,[7] and lifting less than ten pounds." (Tr. 1012-13.) Even if Mr. Stroud's opinion were credited (without factoring in Plaintiff's unreliable self-report), Plaintiff would be found to be not disabled because the ALJ's finding at step five subsumes jobs at the sedentary work level, and substantial evidence also supports the step five finding that there is a significant number of sedentary jobs Plaintiff can perform (at light and sedentary levels), consistent with the opinions Mr. Stroud.

Plaintiff has failed to show prejudice has resulted from the error; therefore remand is not required. *Shinseki v. Sanders*, 129 S.Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (remand for reconsideration not appropriate "where harmlessness is clear").

---

[7] Mr. Stroud indicates Plaintiff's limitations in sitting and standing varied between mild and severe. (Tr. 903.) This unexplained opinion is brief and conclusory and, therefore, not probative to the ALJ's analysis. *Thomas*, 278 F.3d at 957. Further, Plaintiff testified she could stand for 15 minutes at a time and sit for 15 to 30 minutes at a time. (Tr. 994.) Thus, the sit/stand option would accommodate these self-reported limitations.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 21

**B.   Step Five - Other Jobs in the National Economy**

Plaintiff argues the step five findings are not supported by substantial evidence because the VE based her testimony on a hypothetical that did not include the limitations assessed by Mr. Burns, Dr. Bothamley and Mr. Stroud.  (ECF No. 22 at 18-19.)

As discussed above, the ALJ did propound a hypothetical individual capable of sedentary work.  He also properly rejected the marked and severe mental limitations assessed by Mr. Burns, and Dr. Bothamley's opinions that Plaintiff severely limited and could not work.   The ALJ also gave "clear and convincing" reasons for discounting Plaintiff's subjective complaints and self-report of disabling symptoms to medical providers.   Further, the ALJ based mental restrictions included in his hypothetical on opinions and objective psychological testing administered by examining psychologist, Jay Toews, Ed.D., an acceptable medical source.  (Tr. 24, 850-62.)

Dr. Towes evaluated Plaintiff in May 2007.  He reviewed the medical record and administered objective psychological tests.  As noted by the ALJ, Dr. Toews factored in the effects of drug use, and opined cannabis dependence "would affect attention, concentration, the ability to interact, and the ability to function at a consistent pace."  (Tr. 24, 856.)  As found by the ALJ, Dr. Toews opined Plaintiff was functioning in the low average range of intelligence, but observed this level of functioning may have been an underestimate due to evidence of poor effort and exaggeration of symptoms.  (Tr. 24, 859.)  Dr. Toews also reported test results showing Plaintiff was able to comprehend and remember multi-step

instructions and could function mentally in a wide range of occupations, subject to physical limitations. (*Id.*)  In summarizing his findings, Dr. Toews noted Plaintiff's justification of marijuana abuse (although medical records indicated pain control with prescribed medication) as well as test results showing exaggeration of symptoms and inconsistent reports of drug use.  (Tr. 858-60.) The ALJ reasonably gave Dr. Toews evaluation significant weight in the final mental RFC determination.

The ALJ properly considered all physical and mental limitations supported by the record and credible testimony.  The Commissioner's final RFC determination reflects a reasonable interpretation of the evidence in its entirety.  As stated by the Regulations, no special significance is given to a single medical opinion on the issues of RFC and disability, which are administrative determinations based on vocational and medical evidence.  These determinations are the sole province of the Commissioner.  20 C.F.R. § 416.927(e);  *McLeod*, 640 F.3d at 885; *SSR* 96-5p; *SSR* 96-2p.  Where as here, the Commissioner's findings are supported by substantial evidence and free of legal error, they may not be disturbed.

## CONCLUSION

The ALJ properly evaluated Plaintiff's impairments without the effects of drug use.  Plaintiff has failed to provide evidence of a sustained period of abstinence; therefore, she fails to meet her burden to show drug use is a not contributing factor to her disability.  The ALJ's decision is supported by substantial evidence and free of legal error requiring reversal. Accordingly,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 23

1    **IT IS ORDERED:**

2    1.   Plaintiff's Motion for Summary Judgment **(ECF No. 21)** is

3    **DENIED**;

4    2.   Defendant's Motion for Summary Judgment **(ECF No. 24)** is

5    **GRANTED.**

6    The District Court Executive is directed to file this Order and

7    provide a copy to counsel for Plaintiff and Defendant. Judgment

8    shall be entered for **Defendant** and the file shall be **CLOSED.**

9    DATED August 8, 2011.

10
                         S/ CYNTHIA IMBROGNO
11                   UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 24